IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| RODNEY HARRIS, | ) |
| Plaintiff, | ) |
| vs. | ) CV-99-PT-1823-M |
| MICHAEL HALEY, ET AL., | ) |
| Defendants. | ) |

## MEMORANDUM OF OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, Rodney Harris, alleges that his constitutional rights were violated during his incarceration at the St. Clair Correctional Facility in Springville, Alabama. The plaintiff is presently incarcerated at the Limestone Correctional Facility. The amended complaint, filed *pro se*, was filed on October 20, 1999. Plaintiff names as defendants Alabama Department of Corrections Commissioner Michael Haley, Warden Ron Jones, Archie Garrett, Warden, II, Captain Robert Simmons, Joseph H. Headley, Correctional Supervisor I, William Morris, Correctional Officer II, Thomas Sorrow, Correctional Officer I, Elnora Mitchell, Correctional Officer I, Michael Mitchell, Correctional Officer I, Willie Perry, Correctional Officer I, and William McGwier, Correctional Officer II. Plaintiff seeks monetary damages and to be transferred from St. Clair Correctional Facility.[1]

On December 18, 2001, the court entered an Order for Special Report directing that copies of the amended complaint in this action be forwarded to each of the named defendants and

---

[1] Plaintiff's request to be transferred to another prison is moot. Plaintiff has already been transferred from St. Clair Correctional Facility where the constitutional violations allegedly occurred to Limestone Correctional Facility.

requesting that they file a special report responding to the factual allegations of the amended complaint. On February 21, 2002, the defendants filed their special report attaching documents and the affidavits of defendants Michael Haley, Michael Mitchell, William Morris, Joseph Headley, Thomas Sorrow, Robert Simmons, and A. L. Garrett. By Order of October 24, 2002, the parties were notified that the special report filed by the defendants would be construed as a motion for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*. Plaintiff did not file a response to the defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff,

who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTS

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. Defendant Michael Mitchell received a note from plaintiff that was addressed to defendant Headley (defendant Michael Mitchell's affidavit). The note stated that another inmate who lived down the hall in another single cell had stolen plaintiff's tennis shoes (defendant Michael Mitchell's affidavit). Defendant Michael Mitchell assisted in escorting plaintiff and inmate Robert Dawson to the shift office. Defendant Headley conducted an investigation, finding that plaintiff had sold the shoes to the other inmate and that plaintiff had been paid by the other inmate (defendant Michael Mitchell's affidavit). Plaintiff, in an attempt to defraud the other inmate and to regain ownership of the shoes, made

statements which were found to be false (defendant Michael Mitchell's affidavit). Sometime thereafter, defendant Headley conducted an investigation into allegations made by plaintiff against him (defendant Headley's affidavit). The allegations were proven to be false and therefore appropriate disciplinary action was initiated against plaintiff in accordance with Administrative Regulation 403 (defendant Headley's affidavit). On May 26, 1999, defendant Headley wrote plaintiff a disciplinary in which he was charged with violating Rule 41, Making False Statement or Charge to a Department of Corrections Employee with Intent to Deceive the Employee or to Prejudice Another Person (plaintiff's amended complaint page 4 and defendant Garrett's affidavit page one). On May 31, 1999, defendant Sorrow served the disciplinary report upon plaintiff (plaintiff's amended complaint attached page one and defendant Sorrow's affidavit). The disciplinary action stemmed from an ownership dispute between two inmates over a pair of tennis shoes (defendant Sorrow's affidavit). On June 9, 1999, defendant Morris chaired a disciplinary hearing in which plaintiff was charged with violation of Rule 41, Making False Statement or Charge to a Department of Corrections Employee with Intent to Deceive the Employee or to Prejudice Another Person (defendant Morris' affidavit). Defendant Morris found plaintiff guilty of the charge and sentenced him to disciplinary segregation (plaintiff's amended complaint attached page one). Defendant Simmons reviewed the disciplinary and approved the finding of guilty, but reduced the disciplinary segregation time to which plaintiff was sentenced from 45 days to 21 days (plaintiff's amended complaint attached page two and defendant Simmons' affidavit). Upon reviewing the disciplinary, defendant Simmons determined that due process was followed, the signature and time/date blocks were completed, and that the testimony provided did sway against plaintiff (defendant Simmons' affidavit). Defendant Simmons felt that the nature of the charge did not warrant 45 days in

disciplinary segregation, therefore, he reduced the time to 21 days confinement (defendant Simmons' affidavit).

On June 9, 1999, defendant Elnora Mitchell served plaintiff with the complete copy of the disciplinary report (plaintiff's amended complaint attached page three). Defendant Elnora Mitchell also wrote plaintiff a disciplinary for violating Rule 38, Indecent Exposure, on June 9, 1999 (plaintiff's amended complaint attached page three and defendant Garrett's affidavit page one). Defendant McGwier found plaintiff guilty of violating Rule 38 even though plaintiff had informed him that defendant Elnora Mitchell had written the disciplinary in retaliation for the incidents which had occurred between plaintiff and defendant Headley (plaintiff's amended complaint attached page three). Defendant McGwier informed plaintiff that he did not believe him (plaintiff's amended complaint attached page three). Defendant Jones reviewed and approved the disciplinary finding (defendant Garrett's affidavit page one). Plaintiff gave Correctional Officer LaTonya Jackson two letters, one each for defendants Jones and Haley, but "was nothing done" (plaintiff's amended complaint attached page three).

## DISCUSSION

### OFFICIAL CAPACITIES

Plaintiff sued the defendants in their official capacities; however, they are employees of the State of Alabama and cannot be held liable in damages, in their official capacities, for their own acts or those of their employees because they enjoy Eleventh Amendment immunity. Such officers are entitled to dismissal of any claims for damages brought against them in their official capacities as state officials. The United States Supreme Court has stated:

> [T]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed.2d 389 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed.2d 269 (1937). Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). To the extent they are sued in their official capacities, the suit against the defendants is a suit against the state. There has been no consent or waiver in this action; thus, the defendants, in their official capacities, are absolutely immune from damages liability in this action.

RETALIATION

Plaintiff claims that defendant Headley retaliated against him by writing him a disciplinary because plaintiff had filed a claim with the Board of Adjustment against defendant Headley in connection with an allegedly inadequate investigation conducted by defendant Headley involving a pair of tennis shoes. Plaintiff claims further that defendant Headley's actions caused the remaining defendants to retaliate against him and then to attempt to cover up the retaliation by placing him in disciplinary segregation. Plaintiff's final retaliation claim is that defendant Elnora Mitchell wrote him a second disciplinary charging him with violating Rule 38 in retaliation for the incidents which had occurred between plaintiff and defendant Headley.

It is well settled that "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been

proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987). Actions of prison authorities which do not otherwise violate constitutionally secured rights may fall within the ambit of the First Amendment protections if those actions are the product of retaliation against a prisoner for the exercise of a protected right. *Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985). It has been recognized, however, "that claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Consequently, "[c]laims alleging retaliation must be factual and mere conclusory allegations of unconstitutional retaliation will not suffice." *Adams v. James*, 797 F. Supp. 940, 947 (M.D. Fla. 1992).

Retaliation is a question of causation, and the test applied in the "free world" context is a "but for" analysis. In the prison context, however, the proper consideration of proof is to assay a mutual combination between the penal institution's legitimate needs and goals and the rights prisoners have retained under the Constitution. *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); *Wolff v. McDonnell*, 418 U.S.539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). A prisoner suing prison officials under § 1983 for retaliation must allege and ultimately offer proof that (1) he was retaliated against for exercising his constitutional rights and (2) the retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve those goals. *See, for example, Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). Claims alleging retaliation must be factual and merely conclusory allegations of unconstitutional retaliation will not suffice. *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

Plaintiff claims that defendants Headley and Elnora Mitchell initiated the disciplinary actions against him in retaliation for his having made statements against defendant Headley in his Board of

Adjustment claim. It is undisputed that plaintiff filed a Board of Adjustment claim on February 24, 1999. It is also undisputed that defendant Headley wrote plaintiff a disciplinary charging him with Making False Statement or Charge to a Department of Corrections Employee with Intent to Deceive the Employee or to Prejudice Another Person on May 26, 1999. Plaintiff asserts that the disciplinary was issued as retaliation for the exercise of his First Amendment rights. Plaintiff does not, however, allege that he is innocent of the charge. Plaintiff also alleges that the disciplinary charge for violating Rule 38, Indecent Exposure, written by defendant Elnora Mitchell was issued as retaliation for his Board of Adjustment complaint against defendant Headley. Again, plaintiff does not aver that the disciplinary charge was false.

In this case, "the disciplinary [charges] were true as found by the prison administration." *Orebaugh v. Caspari*, 910 F. 2d 526, 528 (8th Cir. 1990).

> While a prisoner can state a claim of retaliation by alleging that disciplinary action were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform. Any other rule would allow a prisoner to openly flout prison rules after filing a grievance [or otherwise exercising his First Amendment rights] and then bring a claim under section 1983 arguing that prison officials disciplined him in retaliation for his filing a grievance [or otherwise exercising his First Amendment rights].

*Id.* Plaintiff clearly was not entitled to make a false statement nor to expose himself to a female correctional officer. Because plaintiff was found guilty of these infractions, his claims of retaliation by the defendants must fail. The court finds that the actions taken against plaintiff did advance legitimate goals of the correctional institution and were narrowly tailored to achieve those goals. The defendants are entitled to summary judgment with respect to plaintiff's claims that they retaliated against him for filing a Board of Adjustment claim against defendant Headley.

DENIAL OF DUE PROCESS

Plaintiff claims that his due process rights were violated when defendant Morris found him guilty of violating Rule 41 in the disciplinary written by defendant Headley "because the disciplinary was no evidence test as a standard of proof in making his factual determinations." He claims further that defendant McGwier's finding of guilt in connection with the disciplinary written by defendant Elnora Mitchell "was not supported by no evidence in the record". He contends that although he told defendant McGwier that the disciplinary was issued in retaliation for his having filed the Board of Adjustment claim against defendant Headley, defendant McGwier stated that he did not believe plaintiff.

The United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct.2293, 132 L.Ed.2d 418(1995) changed the landscape in the analysis of this type of case. Dealing with a case in which a prisoner in Hawaii sued prison officials under § 1983 alleging that he had been denied due process of law before being confined to disciplinary segregation for 30 days, the court concluded that segregation as a form of punishment was not a "dramatic departure" from the ordinary conditions of incarceration. As such, segregation did not amount to a grievous loss of a "substantive" interest protected by the Due Process Clause. Unlike the loss of good-time credits at issue in *Wolff v. McDonnell*, 418 U.S. 539 (1974), mere disciplinary segregation is the type of punishment an incarcerated individual should expect, and one that ordinarily is not a major change in his living conditions. In concluding that placement in disciplinary segregation does not implicate due process, the Court held:

> We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural

9

> protections set forth in Wolff. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Id.*, at 2302.

With the Court's decision in *Sandin*, no longer does the prospect of disciplinary segregation alone mandate the due-process procedures defined in *Wolff*. Placement in a one-man cell is not dissimilar to other forms of confinement found in the Alabama prison system, including administrative segregation, protective custody, and the frequent lockdowns of general population that occur. As such, disciplinary segregation is not a "dramatic departure" from the ordinary conditions of confinement nor is it a "major disruption in [prisoners'] environment." Thus, under the authority of *Sandin v. Conner*, prisoners sentenced to disciplinary segregation have no protected interest requiring the due-process protections outlined in *Wolff v. McDonnell*. Because there is no right to procedural due process of law before the imposition of disciplinary segregation, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

While before *Sandin* plaintiff's assertion that he was sentenced to disciplinary segregation would have sufficiently stated a due process claim under § 1983, *see, e.g. Kyle v. Hanberry*, 677 F.2d 1386 (11th Cir., 1982); *Hensley v. Wilson*, 850 F.2d 269 (6th Cir., 1988), it no longer does so. There is no right to due process before a prisoner is confined to segregation.

Moreover, the fact that plaintiff was also punished by the prohibition against earning CIT (Correctional Incentive Time) does not change the analysis. Unlike *Wolff* where accrued good-time credits were revoked or forfeited, plaintiff in this case was merely precluded from earning CIT credit

in the future; no accrued credits were taken from him. While good-time credits already earned constitute a liberty interest protected by the Due Process Clause, courts have held repeatedly that prisoners have no protectible expectation of continuing to receive good-time credits in the future. *Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991). Plainly, the Alabama Correctional Incentive Time Act, *Alabama Code* § 14-9-40 et seq., provides for the discretionary award of CIT credits, not a right for prisoners to earn CIT. The ability to earn future credits can be stopped at any time for any reason. Thus, insofar as plaintiff was prohibited from earning future CIT (as distinct from forfeiting CIT credits already earned), no protectible liberty interest was involved and due process was not implicated.

Therefore, because there is no right to procedural due process of law before the imposition of disciplinary segregation, the fact that plaintiff was found guilty of violating Rules 38 and 41 even though it is plaintiff's opinion that there was no evidence to support the findings is not actionable under the Fourteenth Amendment or § 1983. The defendants are entitled to summary judgment on this claim.

EQUAL PROTECTION

Plaintiff's final claim is that his equal protection rights were violated when he was found guilty of violating Rule 41 by making a false statement or charge to a Department of Corrections employee with intent to deceive the employee or to prejudice another person even though there was no evidence to support the finding. Plaintiff's generalized claim of prejudice, or discrimination, does not state a claim in violation of the equal protection clause of the Constitution. In *Oyler v. Boles*, 368 U.S. 448, 456 (1962), the United States Supreme Court indicated that to show a constitutional violation there must be a showing of selection deliberately "based upon an unjustifiable standard

such as race, religion or other arbitrary classification." The mere allegation that plaintiff was found guilty of violating Rule 41 by making a false statement or charge to a Department of Corrections employee with intent to deceive the employee or to prejudice another person even though there was no evidence to support the charge does not show any deliberate action against plaintiff by the defendants based upon an unjustifiable standard. The defendants are entitled to summary judgment with respect to this claim.

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that defendants Michael Haley, Ron Jones, Archie Garrett, Robert Simmons, Joseph H. Headley, William Morris, Thomas Sorrow, Elnora Mitchell, Michael Mitchell, Willie Perry, and William McGwier are entitled to judgment as a matter of law. Accordingly, for the reasons stated above, defendants Michael Haley, Ron Jones, Archie Garrett, Robert Simmons, Joseph H. Headley, William Morris, Thomas Sorrow, Elnora Mitchell, Michael Mitchell, Willie Perry, and William McGwier's motion for summary judgment is due to be GRANTED and this action against defendants Michael Haley, Ron Jones, Archie Garrett, Robert Simmons, Joseph H. Headley, William Morris, Thomas Sorrow, Elnora Mitchell, Michael Mitchell, Willie Perry, and William McGwier DISMISSED WITH PREJUDICE.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

DATED this 12th day of May, 2003.

ROBERT B. PROPST
UNITED STATES DISTRICT JUDGE